AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2005 GMC, NM license plate 05714UNM,
VIN: 2GTEK19B851329504

Case No. 16mr64

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
JAN 25 2016
MATTHEW J. DYKMAN
CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment I

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

Attachment II

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841(a)(1) | Distribution of a controlled substance |

The application is based on these facts:
Attached Affidavit of Special Agent Erin Croft

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Erin Croft, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 23, 2016

*Judge's signature*

City and state: Albuquerque, New Mexico

Karen B. Molzen, U.S. Chief Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR AN ORDER AUTHORIZING THE SEARCH OF 2005 GMC TRUCK, VIN: 2GTEK19B851329504 | Magistrate No. <br><br> Under Seal |

### AFFIDAVIT IN SUPPORT OF APPLICATION

I, Special Agent (SA) Erin Croft, of the Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn, hereby state as follows:

### Introduction

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the vehicle known as a 2005 GMC truck, New Mexico license plate 05714UNM, Vehicle Identification Number (VIN) 2GTEK19B851329504, hereafter "VEHICLE," further described in Attachment I, for the things described in Attachment II.

2. I am currently investigating the methamphetamine and heroin trafficking activities of Joseph BALDONADO. There is probable cause to believe that at the listed location there will be found evidence of violations of Title 21, United States Code, Sections 841(a)(1). The statements contained in this Affidavit are based upon my personal knowledge, as well as information provided to me by Task Force Officer (TFO) Lawrence Montano, as well as other agents and officers (hereafter referred to as agents). Because this Affidavit is written for the limited purpose of setting forth probable cause for the requested search warrant, I have not included every fact known to me through this

1

investigation. I have set forth those facts I deem necessary to establish probable cause that evidence, fruits, or instrumentalities of the narcotics offenses will be found at the location to be searched.

**Affiant's Background**

3. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C. § 2516. I have been employed by the DEA since January 2004. I am empowered to investigate, to make arrests with or without a warrant and to execute search warrants under the authority of Title 21 U.S.C. § 878. During this time I accumulated the following training and experience:

(a) I graduated from the DEA Academy located at the FBI Academy, Quantico, Virginia. I received approximately 500 hours of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

(b) As a DEA agent I have directed and participated in investigations targeting individuals and organizations trafficking cocaine, cocaine base ("crack"), marijuana, methamphetamine, heroin, and other controlled substances, as defined in Title 21 Unites States Code, Section 801. During these investigations I have written numerous Probable Cause Affidavits, Title III Affidavits, and Search Warrants.

**Relevant Facts**

4. Beginning in March 2015, I received information from a Region I Narcotic Task Force Confidential Source (CS-1) regarding the drug trafficking of Joseph BALDONADO. CS-1 stated one of the main heroin distributors CS-1 knows in the Los Lunas, New Mexico area is a Hispanic male CS-1 knows by the moniker "HAPPY." CS-1 stated "HAPPY" lives in a trailer located on a dirt road off Monterey Road in Los Lunas, New Mexico and that the trailer has visible surveillance cameras. CS-1 stated "HAPPY" drives a white SUV and a black truck. CS-1 stated CS-1 had purchased up to an ounce of heroin from "HAPPY" and that CS-1 paid $600 for the ounce. CS-1 stated CS-1 had last purchased that amount from "HAPPY" in January 2015. CS-1 stated "HAPPY" is always armed and usually meets people at two locations besides his residence. CS-1 stated "HAPPY" meets people at his sister's residence, which is a trailer located in the trailer park across from JJ's on North El Cerro Loop. CS-1 stated "HAPPY" also meets people at an unknown male's residence located off of Highway 47.

6. Between September and December 2015, I received information from a second Region I Narcotic Task Force Confidential Source (CS-2) regarding "HAPPY." CS-2 stated CS-2 knows a Hispanic male who goes by the moniker "HAPPY" and distributes multiple drugs to include methamphetamine and heroin. CS-2 stated CS-2 had talked to "HAPPY" about purchasing an ounce of methamphetamine and "HAPPY" told the CS that an ounce would be $800. CS-2 stated CS-2 has seen "HAPPY" with a box containing heroin, methamphetamine and cocaine and that CS-2 has also seen "HAPPY" with a handgun during a drug transaction. CS-2 stated CS-2 had met with "HAPPY"

during at least two drug transactions in the VEHICLE and that CS-2 had observed the case with the drugs during at least one transaction. TFO Montano showed CS-2 a driver's license photograph of Joseph BALDONADO and CS-2 identified BALDONADO as "HAPPY."

7. On January 12, 2016, at approximately 1:51 PM, an undercover officer (UC) made contact with BALDONADO at telephone number 505-328-8132. The UC asked BALDONADO if he had any "work" referring to methamphetamine and BALDONADO told the UC that he had plenty of work. The UC confirmed with BALDONADO that the UC wanted to obtain two ounces of methamphetamine and BALDONADO told the UC that BALDONADO would contact the UC once he obtained the methamphetamine from his associate.

8. At approximately 4:31 PM, the UC received a call from BALDONADO. The UC told BALDONADO that the UC was ready to meet BALDONADO. BALDONADO told the UC to meet him at the Hip Hop Shop located at 3419 Highway 47, Los Lunas, New Mexico. The UC told BALDONADO that the UC would contact him once he arrived at the Hip Hop Shop.

9. At approximately 5:09 PM, the UC contacted BALDONADO and told him that the UC was at the Hip Hop Shop. BALDONADO told the UC to come meet him at a residence and directed the UC to a residence located at 19 Vegas Road, Los Lunas, New Mexico.

10. At approximately 5:15 PM, the UC received a call from BALDONADO further directing the UC to the residence located at 19 Vegas Road, Los Lunas, New Mexico. As the UC arrived at the residence, the UC observed BALDONADO was the

4

sole occupant of the VEHICLE, which was backed into the residence located at 19 Vegas Road, Los Lunas, New Mexico.  The UC met with BALDONADO through the driver's side window of the VEHICLE and handed BALDONADO $1600 U.S. Currency.  BALDONADO took the money from the UC and removed the rubber band and commented to the UC that all the bills were fifties.  The UC observed while BALDONADO was looking at the money that BALDONADO was using a police scanner that was lying on the dash of the VEHICLE.  BALDONADO handed the UC two clear plastic bags containing a white crystalline substance.  The UC took possession of the two bags and went back to the UC vehicle and departed the residence at approximately 5:18 PM.  The UC described the residence located at 19 Vegas Road, Los Lunas, New Mexico as a residence that appeared to be being torn down.  I subsequently weighed the two clear plastic bags which weighed approximately 58.8 grams in the original packaging.  I also performed a field test of the white crystalline substance in each bag and obtained a positive result for the presence of methamphetamine.

11. On January 22, 2016, at approximately 1:16 PM, the UC was in contact with BALDONADO regarding purchasing two ounces of methamphetamine.  BALDONADO told the UC to meet him at his friend's place located by the Hip Hop Shop again.  The UC agreed to meet BALDONADO there.  The residence was previously identified on January 12, 2016 as 19 Vegas Road, Los Lunas, New Mexico.

12. At approximately 1:46 PM, surveillance observed the UC arrive at 19 Vegas Road, Los Lunas, New Mexico and park on the street.  Approximately three minutes later surveillance observed BALDONADO arrive at the residence driving the VEHICLE.  Surveillance observed the gate to the property was opened and BALDONADO backed

the VEHICLE onto the property and the UC pulled onto the property with BALDONADO. The UC exited the UC vehicle and met with BALDONADO outside the driver side of the VEHICLE. The UC provided BALDONADO with $1,600 U.S. Currency and BALDONADO provided the UC with a clear plastic bag containing a white crystalline substance. At approximately 1:53 PM, surveillance observed the UC enter the UC vehicle and exit the property located at 19 Vegas Road. The plastic bag containing the white crystalline substance was later weighed by SA Julie Olmsted with an approximate weight of 57.2 grams. SA Olmsted performed a field test of the white crystalline substance and obtained a positive result for the presence of methamphetamine.

13. Once the UC was away from the property, at approximately 1:56 PM, agents entered the property to arrest BALDONADO. At approximately 1:58 PM after calling BALDONADO to exit the residence, BALDONADO was taken into custody without incident.

14. Agents secured the VEHICLE and had the VEHICLE towed to the Albuquerque District Office, as witnessed by GS Jeff Armijo, where it was secured in the secure parking area pending a search warrant being obtained for the VEHICLE. Agents stated they were able to observe through the open driver's side window prior to the VEHICLE being secured that there was a handgun wedged between the console and the driver's seat near the seatbelt buckle area. Agents also observed a glass pipe in the dash area by the heater vents that agents know to be used for smoking controlled substances based on their training and experience. SA Croft also observed the UC place a call to the cellular phone the UC had been in contact with BALDONADO on and GS Armijo heard the phone ring inside the VEHICLE when the call was placed.

15. Based on my training and experience, and conversations with other Officers and Agents, I know the following regarding those involved in the trafficking of controlled substances:

(a) Conspirators in drug trafficking frequently keep records of their transactions, similar to those kept by legitimate business persons engaged in the sale of goods. These conspirators maintain and tend to retain accounts of records of drug transactions. Such records typically detail the amounts of controlled substances or cash outstanding, funds which are owed or expended, along with records tending to indicate and identify co-conspirators. Such records may include customer lists, price lists, notes of telephone messages, financial journals, bank account books, notes of money owed, and records of past purchases of drugs. Typically, because of their importance, these records are maintained by traffickers on their person and/or at their residences, "safe" or "stash" houses, storage lockers, vehicles or facilities and businesses owned and operated by traffickers. These records are stored either electronically in computers on hardware or software, or on paper. These documents tend to be kept by traffickers for an extended period of time.

(b) Narcotics traffickers often possess handguns, shotguns, rifles and other firearms and ammunition which may be used to facilitate the distribution or possession of the illicit substance. Narcotics traffickers also retain documents which indicate possession, ownership, and acquisition of these weapons.

(c) Drug traffickers often use telephones, cellular telephones and pagers to facilitate their sales and to avoid police detection. Drug dealing is an ongoing practice, so customers may call, page or text the drug dealer attempting to place orders at any time.

Drug dealers also use answering machines and/or voicemail to receive messages from customers.

(d) Drug dealers commonly have large sums of money from their drug sale profits. Larger sums of cash are often kept in locked or secure containers.

## CONCLUSION

16. Based upon the facts set forth in this Affidavit, I believe there is probable cause to believe that Joseph BALDONADO is now in possession of records and documents regarding trafficking controlled substances along with the controlled substances themselves; that evidence of these offenses, as further described in Attachment II, will be found in the VEHICLE, as fully described in Attachment I to this Affidavit. I respectfully request the issuance of a search warrant, authorizing any agent of the Drug Enforcement Administration, with the assistance of other law enforcement officers, to enter and search the premises of the property described in Attachment I for items more particularly described in Attachment II, all of which are evidence of and fruits and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1), distribution of a controlled substance, namely heroin and methamphetamine.

17. This Affidavit in support of the requested search warrant was reviewed and approved by Assistant United States Attorney Kimberly Brawley.

_____
Erin K. Croft
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me
this 23rd day of January, 2016.

_____
Karen B. Molzen
United States Chief Magistrate Judge

9

# ATTACHMENT I

## Location(s) To Be Searched

The attached search warrant authorizes the search of the vehicle currently located at the Drug Enforcement Administration, Albuquerque District Office and further described below in or on which the items to be seized could be concealed.

1. **2005 GMC truck, New Mexico license plate 05714UNM, Vehicle Identification Number (VIN) 2GTEK19B851329504.** The vehicle was seized during the arrest of Joseph BALDONADO on January 22, 2016 for distribution of 50 grams or more of a mixture or substance containing methamphetamine, a schedule II controlled substance contrary to Title 21 U.S.C. Sections 841(a)(1),(b)(1)(B). The vehicle was secured and towed to the Drug Enforcement Administration, Albuquerque District Office.

    A picture of the vehicle is attached for further reference below.

    

    

# ATTACHMENT II

## Items To Be Seized

All items listed below that relate to violations of Title 21, United States Code, Section 841(a)(1) and involve Joseph BALDONADO:

1. Records of Money Laundering and drug records, in particular, ledgers, drug transactions, account books, notes, names and/or code names or nicknames and/or identifying information reflecting customers, amounts of drugs bought and sold, amounts of money paid, owed or collected and all appointment calendars.

2. Large amounts of U.S. currency and other items of value and/or proceeds of drug transactions.

3. Any and all drug customer lists, suppliers' lists, or any notes containing the individual names of such persons, telephone numbers and/or addresses of these customers or suppliers and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, or cash received to pay for controlled substances or intended to pay for controlled substances.

4. Telephone and address books or notes containing telephone numbers and addresses of Joseph BALDONADO and other identified targets of the investigation.

5. Indications of ownership or control of these premise and/or other premises used in unlawful drug trafficking activity, including but not limited to, the vehicle registration, insurance, repair receipts and items of mail or other documents.

6. Any and all-paging devices, cellular phones and bills or receipts relating to the leasing/renting of the paging devices and cellular telephones.

7. Firearms and ammunition, including but not limited to handguns, rifles, shotguns and automatic weapons.

8. Any controlled substances enumerated in USCS Title 21 § 812 for which possession without proper prescription, registration or authorization is illegal and in violation of § 841, except as authorized by Title 21 USCS.

9. Any packaging materials and/or scales that may be used to facilitate the trafficking of controlled substances.